Norman KNIGHT, Plaintiff, Appellant,

v.

Mark J. MILLS, etc., et al.,
Defendants, Appellees.

No. 87–1156.

United States Court of Appeals,
First Circuit.

Heard Sept. 9, 1987.
Decided Dec. 29, 1987.

---

Craig A. MacDonnell with whom Valerie C. Samuels and Nutter, McClennen & Fish, Boston, Mass., were on brief, for plaintiff, appellant.

Marjorie Heins, Massachusetts Civ. Liberties Union Foundation, Robert Weber and David Engle, Mental Health Legal Advisors Committee, Boston, Mass., on brief for the Civ. Liberties Union of Massachusetts and the Mental Health Legal Advisors Committee, amici curiae.

Linda G. Katz, Asst. Atty. Gen., Crim. Bureau, with whom James M. Shannon, Atty. Gen., and A. John Pappalardo, Deputy Atty. Gen., Chief, Crim. Bureau, Boston, Mass., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, GARTH,* Senior Circuit Judge, and SELYA, Circuit Judge.

GARTH, Senior Circuit Judge.

Plaintiff-appellant, Norman Knight ("Knight") is a psychiatric patient at the Bridgewater Treatment Center (the "Treatment Center") who has been involuntarily committed for a period of one-day-to-life as a sexually dangerous person ("SDP") pursuant to *Mass.Gen.L. ch.* 123A, §§ 1, 6 (1984). Knight brought this action against defendants-appellees Mark J. Mills ("Mills"), formerly the Massachusetts Commissioner of Mental Health, and Richard Boucher ("Boucher"), the Treatment Center's Chief Administrator, under 42 U.S.C. § 1983. Knight sought money damages as well as a declaratory judgment that, under the Due Process Clause of the Fourteenth Amendment, he was entitled to psychological treatment while committed to the Treatment Center.[1]

The district court granted Mills' motion for summary judgment on two grounds: first, that the Constitution does not con-

---

* Of the Third Circuit, sitting by designation.

1. Knight's complaint does not charge Mills and Boucher—both state officials—with violating Massachusetts' state laws, *see Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), but rather, with having trenched upon Knight's liberty interest as protected under the Due Process Clause of the Fourteenth Amendment, *see Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).

This case thus does not implicate the Eleventh Amendment as did *Pennhurst,* 465 U.S. at 97–106, 104 S.Ct. at 906–11.

template a *per se* right to psychological treatment for involuntarily committed mental patients; and second, that, even if a *per se* right to treatment were recognized, Mills, as a government official, was entitled to qualified immunity from liability under § 1983.

With respect to Mills' codefendant Boucher, the district court dismissed Knight's suit under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. Because this action involves still other claims and parties, the district court directed entry of a final judgment as to Mills and Boucher pursuant to Fed.R.Civ.Pro. 54(b).[2]

■ We are of the opinion that Mills and Boucher, as state officials, are entitled to qualified immunity from civil damages and that Knight's request for declaratory relief cannot be granted on this record. Thus, we will affirm the district court's order without considering Knight's substantive due process arguments.[3]

**I.**

On April 8, 1968, Knight was convicted of assault with a dangerous weapon and was sentenced to a prison term of 3–to–5 years. In late May of the same year, Knight was convicted of a second crime, not described in the record, and was sentenced to 3–to–7 years of imprisonment to be served concurrently with the aforementioned sentence. In July of 1970, again for reasons not made explicit in the record on appeal, Knight was adjudicated to be a sexually dangerous person pursuant to *Mass.Gen.L. ch.* 123A, §§ 1, 6 (1984), and

was civilly committed to the Treatment Center for a period of one-day-to-life.

In 1975, while participating in a gradual release program, Knight escaped from the Treatment Center. The Massachusetts Board of Parole issued a parole violation warrant but was unsuccessful in its attempt to locate and recommit Knight to the Treatment Center. On July 16, 1975, Knight was arrested in Providence, Rhode Island and was subsequently convicted of assault with intent to rape and assault with a dangerous weapon, for which he received concurrent ten year sentences.

On January 16, 1981, after having served six years in a Rhode Island prison, Knight was released and paroled to the outstanding Massachusetts warrant that had been issued after Knight's escape from the Treatment Center. According to Knight's complaint and affidavit, neither of which was contested on this point, Knight received no psychological therapy from the date of his return to the Treatment Center until early November of 1981, despite repeated requests for such treatment. The record reveals, however, that, while Knight did not receive the requested individualized therapy until November of 1981, he had in fact been offered, and rejected, some form of prescribed group therapy in August 1981.

Knight alleges that his initial receipt of treatment in November of 1981, and the fact that he continues to receive treatment, stem solely from his legal challenge to the Treatment Center's refusal to grant him the requested treatment.

**2.** We note that the district court's certification of its judgment as final under Fed.R.Civ.P. 54(b) failed to meet this court's certification requirements as set forth in *Pahlavi v. Palandjian,* 744 F.2d 902 (1st Cir.1984), and reaffirmed in *Santa Maria v. Owens–Illinois, Inc.,* 808 F.2d 848, 855 (1st Cir.1986). In *Pahlavi* this court adopted the standard enunciated in *Allis–Chalmers Corp. v. Philadelphia Elec. Co.,* 521 F.2d 360 (3d Cir. 1975), which requires a district court to "specify those factors upon which it relied in granting certification and, thereby, to furnish us with the benefits of its analysis in marshalling the relevant factors...." *Id.* at 366; *see also United States General, Inc. v. Albert,* 792 F.2d 678, 681 (7th Cir.1986). Although the district court's cer-

tification was deficient in this respect, we nevertheless address the issues that have been presented on appeal. This is not to say that we will do so hereafter. Rather, we shall grant such dispensations sparingly—if at all—in the future.

**3.** It is proper for an appellate court to affirm a *correct* decision of a lower court even when that decision is based on an inappropriate ground. *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937); *Securities and Exchange Comm'n v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943); *Doe v. Anrig,* 728 F.2d 30, 32 (1st Cir.1984).

## II.

We preface our discussion of the issues presented on appeal with the observation that our disposition is affected in large part by the state of the record. Thus, at the outset, we are compelled to focus our attention on that aspect of the instant action.

### A.

Knight filed his initial *pro se* complaint in September 1981. Thereafter he amended his *pro se* complaint in December 1981. It was this amended *pro se* complaint which was the subject of Boucher's motion to dismiss. On December 16, 1981, when Boucher moved to dismiss, no allegation appeared in the December 1981 *pro se* complaint charging that Boucher had violated the federal constitution or other federal laws. Thus, the December 1981 *pro se* complaint did not satisfy the requirements for a § 1983 cause of action against Boucher. *See Williams v. City of Boston*, 784 F.2d 430, 434 (1st Cir.1986).

In August 1982, Knight alleged certain additional conclusory facts with respect to his claim that he was receiving inadequate treatment. These allegations, which appear in Knight's brief but not in the record, may have surfaced as a result of an application made by Knight for appointment of counsel, but because the record is silent in this respect, we cannot be certain. In any event, on September 30, 1982, Knight executed an affidavit which included reference to Boucher in its last paragraph. Knight claimed that Boucher was one of some six individuals who had told him (Knight) to take his requests for a therapist to court. This statement had allegedly been made by Boucher in February 1981.

On November 7, 1983 the Magistrate entered a "Procedural Order" which treated Knight's September 30, 1982 affidavit as an amendment to Knight's December 1981 amended *pro se* complaint. At no time however, did Knight, as a *pro se* claimant, amend his complaint again to reflect the statements which appear in his affidavit.

Once again, Boucher moved to dismiss, as did certain other defendants, including Mills.

On December 14, 1984, the district court ruled on the motions to dismiss, but without identifying whether its ruling was addressed to Boucher's first motion brought against Knight's September 1981 *pro se* complaint or Boucher's second motion brought against Knight's amended December 1981 *pro se* complaint. The district court granted Boucher's motion, without permitting Knight leave to amend, stating "that [it could not] see how an amendment could cure the defect in the claim against [Boucher]." The same order granted Mills' motion to dismiss, but permitted Knight leave to amend his complaint, requiring Knight to set forth "with specificity" the claims against Mills and a co-defendant, Dennis McNamara, who was the Director of Operations at the Treatment Center.

By this time, however, counsel had been appointed for Knight, and it was counsel who filed a second amended complaint on January 15, 1985. This complaint named only Mills and McNamara as defendants— Boucher, as noted, having been previously dismissed.[4] Whereas Knight's initial and amended *pro se* complaints were verified complaints, the second amended complaint filed on Knight's behalf by counsel, was not.

In June 1985, Mills moved for summary judgment, and in the alternative, moved that the claims against him be dismissed. The only affidavit accompanying Mills' motion was that of McNamara, the Director of Operations. That affidavit described the treatment that Knight had received during his stay at the Treatment Center from July 2, 1970 through 1985, and apparently continuing to date.

Knight filed a memorandum opposing Mills' motion for summary judgment. This memorandum was accompanied by an affidavit by Knight describing the treatment he had received while committed to the treatment center.

---

**4.** Prior to the filing of the second amended complaint, Knight's counsel had moved to have the district court reconsider its earlier dismissal of Boucher.

On June 19, 1986, in an opinion by District Court Judge McNaught, Mills' motion for summary judgment was granted and Knight's motion to have the district court reconsider its. December 14, 1984 ruling dismissing Boucher was denied.

On September 12, 1986, Knight's attorney moved for a 54(b) certification asking "... that the court determine that there was no just reason for delay and that it direct the entry of final judgment as to defendants Mark J. Mills and Richard Boucher." Endorsed at the foot of that motion under the date of January 23, 1987, the district court ruled "Motion granted. So ordered. Judgment for the defendants Mills and Boucher." *See* note 2 *supra.* It was from that order that this appeal was noticed.

### B.

We have detailed this chronology not only because of what appears of record, but because of what does not appear. The most notable omission of course is the absence of affidavits filed on behalf of Mills. Mills it will be recalled, had moved for summary judgment arguing in his trial memorandum, (although not specified as such in his moving papers), that: (1) Knight had no constitutional right to treatment and even if such right existed, it was not violated; (2) that Mills had qualified immunity and was immune from damages; and (3) that the federal court had no power over any pendent state law claim.[5] While it is difficult to discern on what basis the district court granted Mills' summary judgment motion, we can only surmise that it relied on Knight's affidavits and the verified allegations of Knight's initial *pro se* (September 1981) and amended *pro se* (December 1981) complaints, inasmuch as no affidavit of Mills appears in the record.

When, on June 19, 1986, Judge McNaught filed his opinion granting Mills' motion for summary judgment, he did so on grounds that he found no constitutionally protected right to psychological treatment, and that even had there been such a right, it had not been violated. Judge

McNaught also adverted in his opinion to Mills' status as Commissioner of the Department of Mental Health, and, citing to *Scheuer v. Rhodes*, 416 U.S. 232, 247–248, 94 S.Ct. 1683, 1692, 40 L.Ed.2d 90 (1974), held that Mills was not liable for a decision made in the good faith exercise of his discretion.

The district court's opinion also addressed the motion made by Knight's counsel for reconsideration of its December 1984 order dismissing Knight's complaint against Boucher. Citing to *Bowring v. Godwin*, 551 F.2d 44 (4th Cir.1977) the district court denied reconsideration on the grounds that Knight had not alleged "... that his symptoms evidence[d] a serious disease or that there was substantial potential for harm from delay or denial of treatment."

### C.

On appeal, Knight's brief raises and emphasizes, among other things, the fact that neither Mills nor Boucher is entitled to qualified immunity, although the subject of Boucher's qualified immunity apparently was not raised in the district court. Additionally, we find ourselves confronted at the outset with Mills' claim that the second amended complaint filed by Knight's counsel does not state a cause of action against him. Before us, Boucher also claims that Knight's *pro se* complaints state no cause of action against him.

If the issue presented to us on this appeal were to be restricted to the sufficiency of Knight's complaints, as they pertained to Boucher, we might well have difficulty in sustaining the district court ruling which dismissed them. Certainly, as to Boucher, it appears that had the district court considered the December 1981 amended *pro se* complaint as incorporating the allegations which were the subject of the Magistrate's "Procedural Order," it is questionable whether such a complaint was deficient. As to Mills, of course, the district court never ruled on his motion to dismiss the

---

**5.** Mills also moved in the alternative, to dismiss   the complaint.

second amended complaint filed by Knight's counsel.

Although the state of the record is somewhat disconcerting, it would still be pointless for us to remand for the development of a more complete record when it is evident that even if a cause of action had been properly stated under § 1983, here both Mills and Boucher have asserted that they are qualifiedly immune from damages by reason of their official positions. Doubtless, this is why Knight in his opening brief, deals so extensively with this subject even though the issue of qualified immunity is regarded as an affirmative defense. *Agosto De Feliciano v. Aponte Roque*, No. 86–1300 (1st Cir. Aug. 14, 1987). What impresses us, however, is that if Mills and Boucher are correct in their qualified immunity claims, there would be little point in our stressing the record's deficiencies because ultimately Knight's recovery of damages and Mills' and Boucher's liability must yield to this issue.[6] In this connection, the record reveals Knight has challenged Mills' entitlement to qualified immunity only with respect to the standard prescribed in *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In addition, it was conceded at oral argument by Knight's counsel that Boucher is an official whose status as such entitles him to such immunity.

Hence, having isolated the one predominant issue—qualified immunity—which necessarily controls the disposition of this appeal, we turn to a consideration of that issue.

### III.

In reviewing a grant for summary judgment, not only must there be no disputed facts, but the facts that are not disputed must be material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); Fed. R.Civ.P. 56(c). In addition, all inferences must be drawn against the movant, in this case Mills, and in the favor of the nonmovant, in this case Knight. *See Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *Ismert & Assoc., Inc. v. New England Mut. Life Ins. Co.*, 801 F.2d 536, 537 (1st Cir.1986). Moreover, the relevant law must lead to one reasonable conclusion in favor of the movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Kazmaier v. Wooten*, 761 F.2d 46, 49 (1st Cir.1985).

On the other hand, the standard we utilize when a complaint is challenged pursuant to Fed.R.Civ.P. 12(b)(6), requires that we look only to the allegations of the complaint and, if under any theory they are sufficient to state a cause of action in accordance with law, a motion to dismiss the complaint must be denied. *Melo–Tone Vending Inc. v. United States*, 666 F.2d 687, 688 (1st Cir.1981). In reviewing such a motion, the allegations of the complaint must be taken as true. *Pujol v. Shearson/American Express, Inc.*, 829 F.2d 1201, 1202 (1st Cir.1987).

Our review in both instances is plenary. With these standards in mind, we are called

---

**6.** Before the district court, Mills argued that he was immune from damages due to qualified immunity. So far as we can tell from the record, Boucher did not make a qualified immunity argument since Boucher's motion to dismiss in the district court was brought under Fed.R.Civ.P. 12(b)(6). In normal course, we do not entertain matters raised for the first time on appeal. However, this is not a *per se* rule, but one left to our discretion. *See, e.g., Needleman v. Bohlen*, 602 F.2d 1, 4 (1st Cir.1979); *Doe v. Anrig*, 728 F.2d 30, 32 (1st Cir.1984) (An appellate court "... is free to affirm a district court's decision 'on any ground supported by the record even if the issue was not pleaded, tried, or otherwise referred to in the proceedings below.'") (citation omitted). We choose to exercise that discretion on this appeal in light of the fact that qualified immunity, if applicable, would, as noted in text, dispose of Knight's claims against both Boucher and Mills.

*Agosto De Feliciano v. Aponte Roque*, No. 86–1300, slip op. (1st Cir. Aug. 14, 1987), is not to the contrary because here, Mills *did* raise the issue of qualified immunity below thereby putting the district court and Knight on notice. Boucher, of course, could not raise this issue on a Fed.R.Civ.P. 12(b)(6) motion, but his position is so closely allied to Mills' that it would be anomalous to reach this issue in Mills' case and not in Boucher's, particularly where Knight's brief discusses the issue with respect to both of these defendants.

upon to review whether summary judgment in favor of Mills was justified and whether the dismissal of Knight's complaint as to Boucher may be sustained. Resting our decision on damages wholly upon the doctrine of qualified immunity, we are satisfied that the district court did not err in its orders. We reach that conclusion because even on the record before us, it is evident that no *material* fact—that is, no fact material to the application of the qualified immunity doctrine—is disputed. In addition, granting all inferences in favor of Knight and assuming the truth of all Knight's allegations, no clearly established constitutional right was violated by either defendant. This being so, we affirm the district court, albeit on somewhat different grounds than those on which the district court based its decisions. *See* note 3 *supra.*

## IV.

◼ The potential for recovery of damages in civil rights litigation involving government officials has been severely curtailed by the law of qualified immunity, which evolved to protect "officials from liability for constitutional violations in all but the most egregious cases." *Note, Qualified Immunity for Government Officials: The Problem of Unconstitutional Purpose in Civil Rights Litigation,* 95 Yale L.J. 126, 127–28 (1985). The primary purpose of qualified immunity is commonly understood to be the protection of government officials from the threat of suits in response to decisions made in carrying out their public duties. *Scheuer v. Rhodes,* 416 U.S. at 238, 94 S.Ct. at 1687.

> This official immunity apparently rested, in its genesis, on two mutually dependent rationales: (1) the injustice, particularly in the absence of bad faith, of subjecting to liability an officer who is required, by the legal obligations of his position, to exercise discretion; (2) the danger that the threat of such liability would deter his willingness to execute his office with the decisiveness and the judgment required by the public good.

*Id.* at 240, 94 S.Ct. at 1688 (citing Jaffe, *Suits Against Governments and Officers: Damage Actions,* 77 Harv.L.Rev. 209, 223 (1963)).

The defense of qualified immunity is available to state executive and administrative officials whose official actions are challenged under § 1983. Although the question of which public officials are entitled to qualified immunity has never been answered by the Supreme Court with specificity, the categories of those whose positions qualify them for such immunity has gradually increased to include a fairly wide spectrum. In *Scheuer v. Rhodes,* 416 U.S. at 246, 94 S.Ct. at 1691, the Court concluded that "higher officers of the executive branch" of state government (*e.g.* the Governor, National Guard Officers, and a State university President) were entitled to qualified immunity when they had been charged with " 'intentionally, recklessly, willfully and wantonly' caus[ing] an unnecessary deployment of the Ohio National Guard on the Kent State Campus", *id.* at 235, 94 S.Ct. at 1686, which, it was alleged, ultimately resulted in the loss of life without due process of law.

Subsequent decisions have expanded on the holding in *Scheuer.* In *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), for example, the Court held that qualified immunity attaches to school administrators who were held to be qualifiedly immune where they had been charged with due process violations. Similarly, in *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), the Court applied the *Scheuer* standard to prison administrators.

Most important for our purposes, the Court's decision in *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), recognized the right of state hospital administrators to be shielded from civil damages by qualified immunity. Taken together, these cases provide qualified immunity to a wide range of state officials and administrators who perform discretionary functions and whose challenged acts fall within the scope of their authority, and

are the types of acts typically performed by a person occupying such an official role.

### A.

In the instant case, both Boucher, as the Chief Administrator of the Treatment Center, whose responsibilities included day-to-day discretionary administration of that institution, and Mills, as the State Commissioner of Mental Health, whose responsibilities included staffing of the Treatment Center, are included within that degree of officialdom which would qualify each of them for qualified immunity.[7] While we would normally expect that determination to be made by the district court, it is evident from Knight's own verified pleadings that the responsibilities and functions assigned to Mills and Boucher entail that type of discretionary judgment which constitutes the cornerstone of qualified immunity. Indeed, as we have noted earlier, counsel for Knight, having been questioned repeatedly during oral argument of this appeal as to whether Boucher would be entitled to such immunity, unequivocally conceded that he would.[8] Thus, we are satisfied that the position held by Mills and Boucher, as state officials charged with making policy involving discretionary judgments, are entitled to claim qualified immunity as a defense against Knight's charges seeking monetary damages.

### B.

However, the determination that both Mills and Boucher by virtue of their positions are entitled to assert the defense of qualified immunity does not complete our task. Rather, a second question remains to be answered before disposition can be made of Knight's claims against them. That question is whether the acts of either Boucher or Mills violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). It is not sufficient that Mills' and Boucher's status as government officials has been demonstrated. In addition, each of them, to be protected from civil damages liability, must establish that the actions with which they are charged "could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).[9] In short, the final inquiry to be answered is whether Boucher or Mills, or both, violated any clearly established constitutional right enjoyed by Knight.

As we understand Knight's position, it is that the Fourteenth Amendment, as interpreted in *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), clearly enunciated a right to psychological treatment. Knight claims that when he was denied this treatment during the period from January to November of 1981, this constitutional right was violated and that those responsible for that violation were, among others, Mills and Boucher. Mills and Boucher, on the other hand, claim that no such clearly established right exists even today, let alone in 1981, the year during which Knight's alleged constitutional right was claimed to have been violated.

Knight's claim that the right to psychological treatment was "clearly established"

---

7. Mills' functions and responsibilities are delineated under Massachusetts' Statutory Law. *See* Mass.Ann.Laws ch. 19, §§ 1–2 (Law.Co-op Supp. 1987); Mass.Ann.Laws ch. 123A, § 2 (Law.Co-op Supp.1987).

8. The following colloquy transpired during oral argument of the instant case:
   The Court: Does [Knight's claim] necessarily lead to relief against Boucher in terms of whatever immunity to which he would be entitled?
   Knight's Counsel: Mr. Boucher is entitled to qualified immunity to the extent ...
   The Court: You concede that?

Knight's Counsel: Only if he can show, can satisfy the *Harlow* test and the refinements to the *Harlow* test.

9. Qualified immunity is provided for government officials because "permitting damage suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

in 1981 stems from his reading of *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), and other cases, foremost among which are *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), *Ohlinger v. Watson*, 652 F.2d 775 (9th Cir.1980) and *Woe v. Cuomo*, 729 F.2d 96 (2d Cir.), *cert. denied*, 469 U.S. 936, 105 S.Ct. 339, 83 L.Ed.2d 274 (1984).[10] However, while these cases discuss the right to treatment during various types of confinement, Knight has directed us to no Supreme Court authority, or decision of this court, which holds that the denial of psychological treatment to a committed person violates the Fourteenth Amendment. Indeed, as we discuss *infra*, that very issue was expressly left open by the Supreme Court in *O'Connor v. Donaldson*, 422 U.S. 563, 571–72 n. 6, 95 S.Ct. 2486, 2491–92 n. 6, 45 L.Ed.2d 396 (1975).

For example, in *Jackson*, the case upon which Knight focuses, the issue before the Court was whether Indiana could indefinitely commit to a state mental hospital criminal defendants who were incompetent to stand trial. In holding that Indiana's commitment procedures violated due process, the Court formulated the requirement that the "nature and duration of commitment [must] bear some reasonable relation to the purpose for which the individual is committed." *Jackson*, 406 U.S. at 738, 92 S.Ct. at 1858. But, that statement must be read in the context of Jackson's case.[11]

Jackson, who was a mentally defective deaf mute, had been charged with robberies in Indiana. He had been held incompe-tent to stand trial and was committed until the Indiana Department of Mental Health certified that he was sane. The Supreme Court held "that a person charged by a State with a criminal offense who is committed solely on account of his incapacity to proceed to trial cannot be held more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain that capacity in the foreseeable future." *Id.* at 738, 92 S.Ct. at 1858.

Thus, *Jackson* did not hold that Indiana, as a requirement of the constitution, had to provide psychological treatment. Nor, for that matter, did *O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), impose that requirement.

O'Connor had been confined for some fifteen years as a mental patient in a Florida state hospital. He filed an action under § 1983 claiming damages from the hospital superintendent and other staff members, alleging unlawful confinement. A jury returned a damage verdict in his favor. The Fifth Circuit affirmed the judgment, *Donaldson v. O'Connor*, 493 F.2d 507, 513–15 (5th Cir.1974), holding that an individual who is involuntarily confined has a constitutional right to receive such individual treatment as will improve his mental condition. The Supreme Court, however, refused to decide whether mentally ill persons have a right to such treatment. It stated,

[w]e have concluded that the difficult issues of constitutional law dealt with by the Court of Appeals are not presented by this case in its present posture. Specifically, there is no reason now to decide

---

**10.** Knight also claims that a number of cases, cited at pages 8–9 of his brief, lend support to his argument. For the same reasons we have discussed in text, we perceive no need to address these cases in detail.

**11.** Mills and Boucher both emphasize that the Massachusetts statute under which Knight was committed serves a two-fold purpose and is not limited to treatment alone. They refer us to *Doe v. Gaughan*, 808 F.2d 871 (1st Cir.1986), where this court, speaking through Chief Judge Campbell, stated:

The very language of the challenged statutes indicates that Massachusetts' object in confin-ing appellants to Bridgewater was to provide a high security environment for men with a potential for doing serious harm—men whom it cannot control in less secure institutions run by the Department of Mental Health....

Thus the nature and duration of appellants' confinement to Bridgewater, a high security facility, clearly bears some reasonable relationship both to the state's public safety needs and to the patients' own therapeutic interests in a secure environment.

*Id.* at 878. *See also Santana v. Collazo*, 714 F.2d 1172, 1176 (1st Cir.1983). Thus, Knight's reliance upon the "treatment cases" is misplaced.

whether mentally ill persons dangerous to themselves or to others have a right to treatment upon compulsory confinement by the State, or whether the State may compulsorily confine a nondangerous, mentally ill individual for the purpose of treatment. As we view it, this case raises a single, relatively simple, but nonetheless important question concerning every man's constitutional right to liberty.

*Id.* at 573. The Court went on to hold that:

... a State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends. Since the jury found, upon ample evidence, that O'Connor, as an agent of the State, knowingly did so confine Donaldson, it properly concluded that O'Connor violated Donaldson's constitutional right to freedom.

*Id.* at 576.

Thus, *O'Connor* simply did not address the constitutional issue of psychological treatment that Knight would have us conclude was in fact "clearly established."

Nor does *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), support Knight's thesis. *Youngberg,* which concerned the conditions under which an involuntarily committed mentally retarded person must be maintained in an institution, provided that such persons are entitled to "... conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests." *Id.* at 324, 102 S.Ct. at 2462.[12] Thus, the

factual circumstances and the holding of *Youngberg,* which primarily centered on the physical restraint of mentally retarded persons, are inapposite.

Knight cites a number of cases that he claims appear to lend support to his argument. He calls our attention to *Bowring v. Godwin,* 551 F.2d 44 (4th Cir.1977), *Ohlinger v. Watson,* 652 F.2d 775 (9th Cir. 1980), and *Woe v. Cuomo,* 729 F.2d 96 (2d Cir.), *cert. denied,* 469 U.S. 936, 105 S.Ct. 339, 83 L.Ed.2d 274 (1984), a Second Circuit case decided in 1984—three years after the year during which Knight claims his constitutional right to psychological treatment had been violated. Neither these cases, nor the others cited by Knight in his brief, *see* Appellant's Brief at 8–9, persuade us that liability may be visited upon Mills and Boucher.

Even if we assume that these cases could not be distinguished from the case before us, it is nevertheless clear that these cases are not binding on this court. Of even more importance, *Harlow* instructs that "[i]f the law at [the time the official action was taken] was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. The Supreme Court, however, had not resolved the issue of a constitutional right to psychological treatment by 1981.[13] Nor had cases such as *Bowring* and *Ohlinger* clearly established such a right that would have been binding on this Court.[14] To us, therefore,

---

12. *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), held that when the conditions of maintenance which we have noted in text are not met,

   ... liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment. *Id.* at 323, 102 S.Ct. at 2462 (footnote omitted).

13. Indeed, the court in *Woe v. Cuomo,* 729 F.2d at 105, noted that by 1984, three years after the violations alleged in this action were said to have taken place, no such clearly established

right had been declared by the Supreme Court. Indeed, as of today, neither the Supreme Court nor this court has yet to resolve this issue.

14. Our conclusion that no such clear constitutional right existed in 1981, is buttressed by the teaching of the recent Supreme Court case of *Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). *Anderson* requires a much more precise and particularized application of *Harlow's* "clearly established" standard. The *Anderson* Court explained,

   ... the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action

it is evident that Knight's attempt to hold Mills and Boucher liable for damages must fail. In the words of *Harlow,* if neither Knight nor Boucher in the year 1981 could "... fairly be said to 'know' that the law forbade conduct not previously identified as unlawful," *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738, then neither of them can be held to respond in damages.

Thus, the question we asked at the outset of this analysis—whether Mills or Boucher or both violated Knight's clearly established right to treatment—must be answered in the negative, inasmuch as no such established right existed in 1981. This being so, both Mills and Boucher are entitled to the protection of qualified immunity and cannot be held liable for civil damages for their alleged failure to provide Knight with psychological treatment after his recommitment to the Treatment Center in 1981.

## V.

Finally we must treat an aspect of Knight's appeal not expressly ruled upon by the district court. In his two *pro se* complaints and in the complaint filed by his counsel, Knight sought, among other relief, a judgment declaring that he was entitled to receive psychological treatment.[15]

Knight argues that it was not until he had threatened, and indeed brought the instant action, that he received the quality of treatment to which he claims he was entitled. He expresses fear that without a declaratory judgment, the treatment which he has been receiving since November 1981 may be terminated.

We have been instructed that a declaratory judgment should be granted only as a matter of judicial discretion exercised in the public interest. We have also been cautioned against rendering declaratory judgments on issues of public moment in speculative situations. *Eccles v. Peoples Bank of Lakewood,* 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784 (1948). Moreover, discretionary declaratory judgments, we are told, should rest on a full bodied record.[16] *Pub-*

---

that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow....* it should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson,* 107 S.Ct. at 3039.

15. In addition to his primary claim that the Due Process Clause of the Fourteenth Amendment guarantees him the right to psychological treatment, Knight argues on appeal that Mills' and Boucher's failure to provide him with psychological treatment, while providing such treatment to other patients, some of whom arrived after Knight did, violated the Fourteenth Amendment's Equal Protection Clause. We reject Knight's equal protection claim for a number of reasons. First, the record does not support such a claim. *See Doe v. Gaughan,* 808 F.2d 871, 881 (1st Cir.1986). Second, this claim was not brought against Mills in the district court and, therefore, we will not entertain it with respect to Mills on appeal. *See United*

States v. Krynicki, 689 F.2d 289, 291 (1st Cir. 1982). Third, we have held that both Mills and Boucher are cloaked in qualified immunity and are thus shielded from the payment of civil damages. And finally, we hold, *infra,* that Knight's request for a declaratory judgment is moot.

Knight also asserts that Boucher's failure to provide psychological treatment showed a "deliberate indifference" to his "serious medical needs" in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *See Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Even if the Eighth Amendment were applicable in a noncriminal context, *but see Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983); *Boring v. Kozakiewicz,* 833 F.2d 468, 471–72 (3d Cir.1987), and even if a difference exists between Fourteenth Amendment and Eighth Amendment protection in the context of the present case, issues which we expressly decline to reach or decide in this case, the record here, as the district court noted, is silent with respect to allegations essential to the establishment of an Eighth Amendment violation.

16. We note that the inadequacy of this appellate record reflects the problems that arise when summary judgment is granted in the absence of affidavits from all parties and when a Rule 54(b) order is issued prematurely and without adequate explanation. *See* note 2 *supra.*

*lic Affairs Associates, Inc. v. Rickover,* 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962). In the present case, as we have earlier explained, we do not have a fully developed record. *See* Part II *supra.* Nevertheless, although scanty, the record is sufficiently adequate to enable us to exercise our discretion in denying declaratory relief where the claim for relief is speculative and the judgment sought would secure a constitutional ruling in advance of necessity.

Mills and Boucher argue that any request for declaratory relief has become moot. McNamara's affidavit supports this argument. That affidavit, which remains undisputed, discloses that for five years during Knight's first stay at the Treatment Center, (1971–75), Knight received psychological treatment. On his return to the Treatment Center in or about January 1981, the Treatment Center was undergoing a period of transition with respect to treatment philosophy. Whereas individual psychotherapy had previously been prescribed, the Treatment Center had begun to move toward group therapy, a "psychosocial therapeutic modality."

In August 1981, Knight was invited to participate in the group therapy program but refused. Commencing in November 1981, Knight began weekly individual meetings with a therapist which continued until January 1983. In February 1983, Knight participated in a fifteen week short-term "needs assessment group." In January 1984, Knight began weekly individual psychotherapy treatment which McNamara states continued at least until the date of his affidavit, which was dated June 1985. McNamara's affidavit further states that in March 1985, Knight joined a social skills training group that meets weekly; that Knight's treatment plan was to be reviewed during 1985; and that "... it is not anticipated that treatment will be terminated in the foreseeable future." App. at 130.

Thus, on the only record available to us, it appears that the treatment which Knight would have us endorse in the form of a declaratory judgment has been afforded to Knight, at least through May 30, 1985, and it is not anticipated that the treatment will be terminated. Indeed, Knight admits in his brief, concededly not an evidentiary document, that as late as May 8, 1987, he was receiving treatment. Appellant's Brief at 5.

"... [A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (quoting *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969)). Here, Knight is receiving the very treatment which he has sought to obtain by bringing this suit. Thus, a declaratory judgment as to Knight's right to psychological treatment would not provide Knight with anything he does not already have.

We are aware, of course, that as a general proposition, the "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979); *DeFunis v. Odegaard,* 416 U.S. 312, 319, 94 S.Ct. 1704, 1707, 40 L.Ed.2d 164 (1973) (per curiam). This rule is derived from the notion that a challenged practice or policy might always evade review by being voluntarily abated during the pendency of a legal challenge thus leaving the defendant "free to return to his old ways." *United States v. W.T. Grant Co.,* 345 U.S. 629, 632–33, 73 S.Ct. 894, 897–98, 97 L.Ed. 1303 (1953). Knight claims that this is what will happen if the Treatment Center is not compelled by this court to continue Knight's psychological treatment after this litigation ceases.

However, as the Supreme Court stated in *Davis,* jurisdiction that has been properly acquired may abate even as the result of a voluntary cessation of the allegedly illegal conduct when two conditions have been met: "(1) it can be said with assurance that 'there is no reasonable expectation ...' that the alleged violation will recur, ... and (2) interim relief or events have completely and irrevocably eradicated the ef-

fects of the alleged violation." *Davis*, 440 U.S. at 631, 99 S.Ct. at 1383 (quoting *United States v. W.T. Grant Co.*, 345 U.S. at 632, 73 S.Ct. at 897) (citations omitted). When these conditions have been met, a case is construed as having become moot "because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law." *Davis*, 440 U.S. at 631, 99 S.Ct. at 1383; *see also United States v. Phosphate Export Ass'n.*, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968).

For example, in *Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975), the Court ruled that an action by a state prisoner for injunctive and declaratory relief was rendered moot because the actions challenged by the prisoner were no longer in effect by the time the case had reached the district court. Newkirk, a prisoner, challenged his transfer from a medium security to a maximum security prison because of his involvement in a conflict among inmates. By the time his case reached the district court, Newkirk had been retransferred to the medium security prison and a notation had been made in his file expressly stating that his transfer should have no bearing on the parole board's future determination regarding his status. Although Newkirk argued that his transfer back to the medium security prison could be reversed at any time, the Supreme Court nevertheless held that Newkirk's suit for a declaratory judgment had become moot. *Id.* at 403, 95 S.Ct. at 2335.

In directing the district court to dismiss the claims made by Newkirk, the Supreme Court found no basis for the expectation that the wrong would be repeated, stating that "[a]ny subjective fear Newkirk might [have] entertain[ed] of being transferred, under circumstances similar to those alleged in the complaint, or of suffering adverse consequences as a result of ... [his] transfer, [were] indeed remote and speculative...." *Id.* On this rationale, the *Preiser* Court concluded that

"... speculative contingencies afford no basis for our passing on the substantive issues [Newkirk] would have us decide ..." The record of events since the challenged transfer hardly bears out a genuine claim of an injury or possible injury "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*Id.* (quoting respectively, *Hall v. Beals*, 396 U.S. 45, 49, 90 S.Ct. 200, 202, 24 L.Ed.2d 214 (1969) and *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).

Much the same form of speculation is at work in the present case. We are satisfied that Knight's claim is not imbued with the kind of "immediacy" and "reality" contemplated by the Court in *Preiser*. Nor does it demonstrate on this record a reasonable expectation that the feared violation will recur. Moreover, Knight's continuing treatment would appear to have eradicated the effects of the alleged violation. *Davis*, 440 U.S. at 631, 99 S.Ct. at 1383. Under these circumstances we are persuaded that Knight's claim against Mills and Boucher for declaratory relief is moot.

We are satisfied that, after having apparently received an aggregate of almost eleven years of psychological treatment since he was first admitted to the Treatment Center in 1970—treatment which is being continued—declaratory relief is unnecessary and Knight's action as to these two defendants, with respect to this relief, is moot.

## VI.

We recognize that this proceeding is still pending in the district court as to other defendants.[17] In light of our holding that relief in the form of declaratory judgment against Mills and Boucher is moot, we will remand this aspect of the case to the district court with directions to dismiss so much of Knight's complaint as seeks declaratory relief as to Mills and Boucher. *See United States v. Munsingwear, Inc.*,

17. Given the fact that Knight's claim for declaratory relief remains pending as to the other defendants, the district court may, on a *fully*

developed record, consider such relief as to these remaining defendants if a present or future need for such relief is demonstrated.

340 U.S. 36, 39, 71 S.Ct. 104, 107, 95 L.Ed. 36 (1950).

In all other respects, having held that Mills and Boucher are entitled to qualified immunity and are therefore not liable for civil damages, we will affirm the district court's January 23, 1987 judgment for both defendants.