William J. WILLIAMS, Plaintiff,

v.

### HEALTHALLIANCE HOSPITALS, INC., Defendant.

#### No. Civ.A. 00–40097–NMG.

United States District Court,
D. Massachusetts.

March 27, 2001.

**108**

Richard J. Yurko, Yurko & Perry, Boston, MA, for Plaintiff.

Michael L. Rosen, Robert A. Fisher, Foley, Hoag & Eliot, LLP, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Plaintiff, William J. Williams ("Williams"), filed the above-entitled action in the Massachusetts Superior Court on May 12, 2000. On June 12, 2000, defendant, HealthAlliance Hospitals, Inc. ("HealthAlliance"), removed the case to federal court on the ground that it is governed by the provisions of the Employee Retirement Income Security Action of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Now pending before this Court are 1) defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted (Docket No. 4), and 2) plaintiff's motion to compel arbitration of the dispute (Docket No. 8).

### I. *Background*

For over 22 years, Williams served as the Director and CEO of Burbank Hospital ("the Hospital") and later as President and CEO of the Hospital's parent corporation, CentMass System. Defendant, HealthAlliance Hospitals, Inc. ("HealthAlliance"), is the successor-in-interest to the Hospital.

In order to offer Williams a more competitive compensation package, in 1986 the Hospital's Board of Trustees voted to establish a Supplemental Executive Retirement Plan ("the SERP") whereby Williams would receive an annual retirement benefit equal to 100% of his highest annual salary in the five years preceding his retirement at age 60 (or a lesser amount should he leave or retire before that time). The SERP was to be funded by life insurance policies.

In 1989, according to Williams, the Hospital proposed a change in his retirement plan which it claimed would be advantageous to the Hospital yet still provide the same vested benefits to which he was entitled under the SERP. As a result, in October of 1990, the SERP was superceded by an agreement establishing a so-called "split dollar" insurance plan ("the Split Dollar Plan"). Under that plan, ownership of the insurance policies which funded the SERP was transferred to Williams, while the Hospital continued to pay the annual premiums. The Hospital retained a security interest in those premiums, entitling it to recover their value plus 5% upon Williams' death. Williams' beneficiaries were to receive any remaining death benefit.

In 1996, at the age of 58, Williams retired from the Hospital and the CentMass Health System. In 1998, and 1999, he requested in writing his full benefits from the insurance policies. Williams alleges that, on October 19, 1999, HealthAlliance refused to make life insurance policy dividends or cash values available to him on an ongoing basis during his retirement be-

cause it believed that there would otherwise be a shortfall in the amount of death benefits available to reimburse it for premiums paid under the Split Dollar Plan.

On May 12, 2000, Williams brought the instant suit against HealthAlliance, for declaratory and equitable relief arising from the alleged breach by HealthAlliance of its contractual undertaking to provide benefits. Specifically, the complaint seeks 1) a declaration, pursuant to M.G.L. c. 231A, of Williams' rights and obligations under the Split Dollar Agreement, 2) reformation of the Split Dollar Plan to Comport with Williams' understanding that it would provide him with benefits equivalent to those he was to received under the SERP, 3) damages for breach of the Split Dollar Plan, and 4) an order to compel arbitration of all claims pursuant to an arbitration clause in the Split Dollar Plan.

## II. *Defendant's Motion to Dismiss*

### A. Standard for Motions to Dismiss

A motion to dismiss for failure to state a claim may be granted only if it appears, beyond doubt, that the plaintiffs can prove no facts in support of their claim that entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court must accept all factual averments in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B.,* 958 F.2d 15, 17 (1st Cir.1992). The Court is required to look only to the allegations of the complaint and if under any theory they are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *Knight v. Mills,* 836 F.2d 659, 664 (1st Cir.1987).

### B. ERISA Preemption of Plaintiff's Claims

HealthAlliance argues that Williams' claims for declaratory relief, reformation of the Split Dollar Plan and breach of contract should be dismissed because they are all preempted by ERISA.

■ Section 514 of ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). ERISA preemption analysis thus requires courts to ask 1) whether the plan at issue is an "employee benefit plan", and 2) whether the cause of action "relates to" the employee benefit plan. *McMahon v. Digital Equip. Corp.,* 162 F.3d 28, 36 (1st Cir.1998).

ERISA applies to

any employee benefit plan if it is established or maintained—

(1) by any employer engaged in commerce or in any industry or activity affecting commerce; or

(2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or

(3) by both.

29 U.S.C. § 1003(a). ERISA defines an employee benefit plan as either "an employee welfare benefit plan or an employee pension benefit plan", or both. 29 U.S.C. § 1002(3). An employee welfare benefit plans is

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance of otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or

day care centers, scholarship funds or prepaid legal services. . . .

29 U.S.C. § 1002(1).

■ Applying the statutory test, this Court finds that the Split Dollar Plan constitutes a welfare benefit plan subject to ERISA because it provides death benefits in annuity form. Moreover, paragraph 11(a) of the plan expressly states that "[t]he split dollar arrangement . . . is intended to qualify as an exempt welfare plan under regulation promulgated under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA")."

■ The Split Dollar Plan also qualifies as a welfare benefit plan under the test set forth therefor by the First Circuit Court of Appeals. A welfare benefit plan has been established

> if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.

*Wickman v. Northwestern Nat'l Ins. Co.,* 908 F.2d 1077, 1082 (1st Cir.1990) (*quoting Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982) (en banc)). Courts should also consider whether the employer has undertaken an on-going administrative and financial obligation for the benefit of employees. *Belanger v. Wyman–Gordon Co.,* 71 F.3d 451, 454 (1st Cir.1995) (*citing Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 12, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)).

The Split Dollar Plan satisfies all three criteria: 1) the intended benefits provided by the plan include death benefits as well as retirement income for Williams in the form of his right to make withdrawals from the excess net cash value accumulated under the insurance policies, 2) the class of beneficiaries includes Williams and any of his beneficiaries, and 3) insurance policies provide the source of paying benefits. Furthermore, HealthAlliance (then the Hospital) was designated the "named fiduciary" and "plan administrator" and it assumed responsibility for paying the premiums on Williams' life insurance policies and responding to requests for benefits by Williams or his beneficiaries. Accordingly, the Split Dollar Plan is an employee benefit plan subject to ERISA.

■ A law "relates to" an employee benefit plan "if it has a connection with or reference to such a plan." *Ingersoll–Rand Co., v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). In *Ingersoll–Rand Co.,* the United States Supreme Court identified two tests for determining whether an action brought under state law "relates to" an ERISA plan. First, a claim is expressly preempted by ERISA where a plaintiff, in order to prevail, must plead, and the court must find that an ERISA plan exists. *Id.* at 140, 111 S.Ct. 478. "The cause of action 'relates to' an ERISA plan in this context because the court's inquiry must be directed to the plan." *Vartanian v. Monsanto Co.,* 14 F.3d 697, 700 (1st Cir.1994). Second, even if there is no express preemption, a cause of action is preempted if it conflicts directly with a cause of action afforded by ERISA. *Ingersoll–Rand Co.,* 498 U.S. at 142, 111 S.Ct. 478.

■ Williams' claim for breach of contract is clearly preempted because he would have to prove the existence of an employee benefit plan governed by ERISA (i.e. the Split Dollar Plan) to support his claim that benefits owed to him were wrongfully withheld. *Ingersoll–Rand Co.,* 498 U.S. at 140, 111 S.Ct. 478; *Vartanian,* 14 F.3d at 700. For the same reason, Williams' claims for declaratory relief and reformation of the Split Dollar Plan are also preempted. Although not specifically contract actions, those claims sound in con-

tract and Williams would, again, have to prove the existence of an employee benefit plan in order to evoke, from this Court, a declaration of his rights under the Split Dollar Plan or a reformation of that plan to conform with his understanding that it would provide benefits commensurate with those guaranteed by the SERP.

Moreover, the United States Supreme Court has construed ERISA's preemption provision "to preclude state claims to enforce rights under an ERISA plan or obtain damages for wrongful withholding of those rights." *Turner v. Fallon Community Health Plan, Inc.*, 127 F.3d 196, 199 (1st Cir.1997) (*citing Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52–57, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). Indeed, "[i]t would be difficult to think of a state law that 'relates' more closely to an employee benefit plan than one that affords remedies for the breach of obligations under that plan." *Id.* Williams' state law claims seek to enforce, via alternate routes, his alleged rights under the Split Dollar Plan and those claims directly conflict with § 502(a) of ERISA which allows a plan participant or beneficiary to bring a civil suit to recover benefits due under the terms of a plan and to obtain a declaration of the rights of a participant or beneficiary to future benefits. 29 U.S.C. § 1132(a). All three of Williams' claims are preempted, therefore, because they are relied upon to obtain benefits.

Mindful that preemption does not necessarily compel dismissal under Fed.R.Civ.P. 12(b)(6), *see, e.g., Fitzgerald v. Codex Corp.*, 882 F.2d 586, 589 (1st Cir.1989), this Court is, nonetheless, not in the business of drafting claims for plaintiffs. Accordingly, the complaint will be dismissed without prejudice to the filing of an amended complaint by Williams to state any causes of action allegedly available to him under ERISA.

## III. *Plaintiff's Motion to Compel Arbitration*

■ Williams next argues that, even if his claims are preempted by ERISA, this Court should compel arbitration of the dispute pursuant to § 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, and § 2 of the Massachusetts Uniform Arbitration Act ("MAA"), M.G.L. c. 251 §§ 1 *et seq.*

Both the 1986 SERP and the 1990 Split Dollar Plan contain arbitration provisions, but Williams' motion should be evaluated with respect to the latter, *see* Split Dollar Plan ¶ 11(e), because the Split Dollar Plan was intended to replace the SERP. This Court will not, however, compel arbitration of preempted state-law claims or as yet unstated ERISA claims. Accordingly, Williams' motion to compel arbitration will be denied.

## ORDER

For the reasons set forth in the Memorandum above:

1) Defendant's motion to dismiss the complaint for failure to state a claim (Docket No. 4) is ALLOWED, without prejudice to plaintiff filing an amended complaint stating any causes of action alleged under ERISA; and

2) Plaintiff's motion to compel arbitration (Docket No. 8) is DENIED, without prejudice.

If plaintiff files an amended complaint stating causes of action under ERISA and renews his motion to compel arbitration, he will address the following issues:

1) whether the Split Dollar Plan constitutes a "transaction involving commerce" under § 2 of the Federal Ar-

bitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.;*

2) if the Split Dollar Plan is subject to the FAA, whether it preempts application of the Massachusetts Uniform Arbitration Act, M.G.L. c. 251 §§ 1 *et seq.;* and .

3) whether any such ERISA claims are arbitrable under arbitration provision in the Split Dollar Plan.

So ordered.