**Robert E. CAMERON, Plaintiff**

v.

**Michael FAIR, Edward Murphy, John Noonan, Ian Tink, Thomas DaSilva, Elisha Swain, Raymond T. Hamel, John Hart, Norman Benyue, C.O. Beaulieu, Philip Chartier, Glenn Edington, Dan Anacki and Joseph Modica, Defendants**

**Civ. A. No. 87–1153–RCL.**

United States District Court, D. Massachusetts.

May 25, 1995.

---

Thomas P. Gorman, Sherin & Lodgen, and Bruce D. Berns, Francis C. Lynch, and Maria A. Patrizio, Palmer & Dodge, Boston, MA, for plaintiff.

Emily Den, Philip J. Holmes Atty. General's Office, Richard A. Goldstein, Atty. General's Office, Trial Div., Real Estate Section, and Linda Nutting Murphy, Atty. General's Office Crim. Bureau, Boston, MA, for defendants.

## OPINION

LINDSAY, District Judge.

Defendants Edward Murphy, John Noonan, Ian Tink, Michael Fair and Thomas DaSilva object to a Report and Recommendation of a magistrate judge, which recommended that this court deny their motion for summary judgment.

For the reasons which follow, the court declines to accept the Report and Recommendation of the magistrate judge, and grants the defendants' motion for summary judgment.

### 1. Previous Ruling of Law in this Case By Judge Keeton

The plaintiff is an inmate at the Massachusetts Treatment Center for the Sexually Dangerous ("Treatment Center"). His amended complaint asserts fifteen counts against the defendants, all flowing from a strip search and body cavity search of him in May of 1986.

On March 18, 1988, Judge Keeton of this district issued a memorandum and order ("Keeton Order") significantly narrowing the scope of the plaintiff's case. The defendants had moved for summary judgment on all counts. Judge Keeton denied summary judgment as to counts One and Two, to the extent they alleged a violation of the plain-

tiff's Fourth Amendment rights, and as to Count Three, to the extent it alleged a failure to supervise. The defendants' motion for summary judgment was allowed as to Counts Four, Five, Six, Seven, Eight, Eleven, Thirteen, Fourteen and Fifteen.[1] The motion was also allowed as to Counts One and Two, to the extent they alleged a violation of the plaintiff's Sixth Amendment rights, and as to Count Three to the extent it alleged a failure to promulgate constitutional regulations for the use of force during a strip search.

As to counts One and Two, Judge Keeton explained that strip searches and body cavity searches are generally constitutional. Keeton Order at 6. He stated, however, that the affidavit filed by the plaintiff put into genuine dispute the question of whether the defendants, who had actually conducted the search in this case, had acted reasonably. *Id.* at 7. Judge Keeton noted that the plaintiff had alleged that the defendants had kicked him in the side during the search process and had pushed something into his anal cavity. *Id.* Judge Keeton stated that "a rational jury might conclude that plaintiff's Fourth Amendment rights had been violated." *Id.*

As to Count Nine of the amended complaint, asserting state law claims against all of the defendants, Judge Keeton noted that Article 14 of the Massachusetts Constitution parallels the Fourth Amendment, and that "for the same reasons stated [as to the Fourth Amendment claims alleged in Counts One and Two], the motion for summary judgment as to count IX must be denied." *Id.* at 8.

Count Three of the amended complaint asserted that defendants DaSilva, Noonan and Fair had "[1] failed to promulgate constitutional regulations for and [2] failed to adequately supervise Treatment Center corrections officers in the use of force on or contact with a Treatment Center inmate during a strip or body cavity search," amounting to a violation under the Fourth, Fifth and Fourteenth Amendments.

As to the claim that the defendants had failed to promulgate constitutional regulations, Judge Keeton squarely ruled that "[t]hese regulations are constitutional." Keeton Order at 12.

---

1. Count Four alleged that defendants Fair, Noonan and DaSilva deprived Cameron of his Fifth, Sixth and Fourteenth Amendment rights when they failed to require that the Treatment Center policy regarding strip or body cavity searches be posted in areas to which Treatment Center inmates had access, and when they promulgated and enforced a policy requiring inmates to submit to strip and body cavity searches following visits from counsel. Count Five asserted that defendants Fair, Noonan and DaSilva deprived Cameron of his right to privacy when they ordered the videotaping of the strip and body cavity search. Count Six alleged that defendants Murphy and Tink deprived Cameron of his Fourth, Fifth, Sixth and Fourteenth Amendment rights when they failed to insure that the Treatment Center policy regarding strip and body cavity searches following visits be posted in areas to which Cameron and other Treatment Center inmates had access, and when they promulgated, caused to be promulgated, or permitted to be promulgated, a policy requiring Treatment Center inmates to submit to a strip and body cavity search following a visit from counsel and permitting the use of force on non-consenting inmates. Count Seven claimed that defendants Murphy and Tink deprived Cameron of his constitutional right to privacy when they permitted or failed to prevent the videotaping of the strip and body cavity search of Cameron. Count Eight alleged that defendants Tink and Murphy deprived Cam-

eron of his Fifth and Fourteenth Amendment rights when (1) Tink failed to make a timely and thorough investigation or report of the strip and body cavity search incident involving Cameron and (2) Murphy failed to require a thorough investigation of the strip and body cavity search and failed to require the submission of a detailed and thorough report on that incident. Count Eleven, for assault and battery, claimed that defendants Fair, Noonan and DaSilva acted intentionally when they promulgated and enforced a Treatment Center policy requiring corrections officers to use force on Cameron when Cameron failed to consent to a strip and body cavity search following a visit from counsel, and that this conduct placed Cameron in fear or apprehension of immediate physical harm and constituted the unconsented and unjustified use of force. Count Thirteen alleged that the actions of defendants Fair, Noonan and DaSilva, in promulgating a policy or otherwise permitting the use of force by corrections officers to conduct an unconsented strip and body cavity search of Cameron, constituted intentional infliction of emotional distress. Count Fourteen asserted against Fair, Noonan and DaSilva a common law claim for invasion of privacy, because they allegedly required the videotaping of the strip and body cavity search. Count Fifteen asserted a claim for invasion of privacy against defendants Murphy and Tink for the videotaping of the strip and body cavity search.

As to that aspect of count Three which asserted a failure to supervise, Judge Keeton noted that "[b]ecause I have denied summary judgment as to counts I and II to the extent they allege a violation of the Fourth Amendment, plaintiff remains free to prove that the strip search as conducted was unconstitutional. Plaintiff is entitled to discovery to produce evidence of failure to supervise the conduct of officers conducting this search because the matter is not within plaintiff's personal knowledge." *Id.* at 10.

### 2. The Magistrate Judge's Report and Recommendation

Defendants DaSilva, Noonan and Fair renewed their motion for summary judgment on the supervisory liability aspect of Count Three.

In her Report and Recommendation, the magistrate judge recommended denying the defendants' motion for summary judgment as to Count Three, stating that

> DaSilva conceivably had authority to formulate regulations pertaining to the forced strip search of Treatment Center inmates. While he was generally aware of the Treatment Center's unclothed search policy, his failure to institute a regulation requiring prior consultation with a DMH employee might have avoided the May 27, 1986 incident. Summary judgment in favor of DaSilva is inappropriate inasmuch as this court finds genuine issues of material fact concerning his gross negligence or deliberate indifference through his failure to enact such a regulation.

Report and Recommendation at 18–19.

With respect to defendants Fair and Noonan, the magistrate judge similarly stated that:

> ... implementing or suggesting the implementation of such a regulation requiring prior consultation with a DMH employee might have avoided the May 27, 1986 incident. Summary judgment in their favor is therefore inappropriate inasmuch as this court finds genuine issues of material fact with regard to their gross negligence or

deliberate indifference through their failure to enact such a regulation.

*Id.* at 20.

This court cannot accept these recommendations of the magistrate judge. The magistrate judge seems to have overlooked the Keeton Order. Judge Keeton clearly ruled that DaSilva, Noonan and Fair were entitled to summary judgment on the plaintiff's claim that they had failed to promulgate constitutional regulations. He let the plaintiff proceed on Count Three only to the extent that it asserted a failure adequately to supervise Treatment Center officers in the use of force on Treatment Center inmates during a strip or body cavity search. The Report and Recommendation thus reaches a conclusion that is the precise opposite of that reached by Judge Keeton. For that reason the Report and Recommendation must be rejected.

Moreover, the Report and Recommendation does not address the failure to supervise claim. This court must therefore consider anew the defendants' motion for summary judgment as it relates to that claim.[2]

### 3. Count Three: Failure to Supervise

Summary judgment is warranted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994). The record must be reviewed in a light most favorable to the nonmovant, and all reasonable inferences must be drawn in that party's favor. *Id.* "A party opposing summary judgment must 'present definite, competent evidence to rebut the motion.'" *Id., quoting Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992), *and citing Fragoso v. Lopez*, 991 F.2d 878, 887 (1st Cir.1993). "Brash conjecture, coupled with earnest hope that something concrete will eventually materialize, is insufficient to block summary judgment." *Maldonado–Denis*, 23 F.3d at 581, *quoting Dow v. United*

---

**2.** Because of the result this court reaches today, it is unnecessary to review the magistrate judge's

recommendation that summary judgment be denied on other grounds offered by the defendants.

*Bhd. of Carpenters,* 1 F.3d 56, 58 (1st Cir. 1993).

The First Circuit recently set out the law on the liability of superior officers in *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581–83 (1st Cir.1994).

> Although a superior officer cannot be held vicariously liable under 42 U.S.C. § 1983 on a *respondeat superior* theory, ... he may be found liable under section 1983 on the basis of his own acts or omissions.....
> [A] supervisor may be held liable for what he does (or fails to do) if his behavior demonstrates deliberate indifference to conduct that is itself violative of a plaintiff's constitutional rights.... A causal link may ... be forged if there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing violations. When the supervisor is on notice and fails to take corrective action, say, by better training or closer oversight, liability may attach.... We hasten to add that isolated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference.... [I]nadequate training of subordinates may be a basis for a section 1983 claim against a superior officer....

*Id.,* 23 F.3d at 581–83 (citations omitted).

As noted previously, that aspect of supervisory liability which applies to a failure to promulgate polices or regulations is no longer at issue in this case, Judge Keeton having disposed of it. What is at issue is whether the plaintiff has established a triable issue regarding the defendants' claimed failure adequately to supervise Treatment Center correction officers in the use of force on a Treatment Center inmate during a strip or body cavity search.

■ The plaintiff has adduced no evidence which supports his claim of liability under Count Three of the amended complaint. He has presented nothing whatsoever about the disciplinary history of the individuals involved in the alleged unreasonable search; nor has he presented anything about the supervision of the correction officers at the Treatment Center generally or about the training of the officers with respect to the use of force during body cavity searches. In over half a decade following the Keeton Order, the plaintiff has not deposed any of the Count Three defendants.

The plaintiff points only to the defendants' answers to interrogatories. These interrogatory answers, however, do not get the plaintiff over the summary judgment hurdle.

According to his interrogatory answers, defendant DaSilva, at the time of the May, 1986 incident, was the director of security, responsible for all security measures and for formulating new rules and procedures concerning the Treatment Center. DaSilva recalled "receiving training at the academy as well as periodic in-house updates pertaining to policies and procedures concerning unclothed searches and the circumstances under which unclothed searches are required or permitted to be performed at the Treatment Center." DaSilva was never asked whether and how often the correction officers at the Treatment Center were trained as to strip search policy and procedure; he was asked nothing about the supervision of the officers with respect to strip searches or about supervision with respect to anything else for that matter; he was asked nothing about disciplinary procedure; and he was asked nothing about complaints about the specific correction officers implicated in this case. In short, as to the supervisory defendant who was in a direct position to supervise the defendants who allegedly used unreasonable force during the search of the plaintiff, the plaintiff has offered no evidence having any bearing on his potential liability for failing to supervise these officers.

The plaintiff focuses on DaSilva's statement that he "does not recall ever being informed that a [Department of Mental Health] employee was required to be consulted before or be present during an unclothed search." It is undisputed that there was no such regulation promulgated at the time of the search. As noted above, the failure to promulgate such a regulation is no longer an issue in this case. The plaintiff's claim, as narrowed by Judge Keeton, is one for an unreasonable body cavity search under the Fourth Amendment, not one for a "right to

**392**

adequate treatment" under the Due Process Clause. The focus on the failure to promulgate a regulation requiring consultation with a clinician prior to conducting a strip search is simply a red herring.

Noonan's and Fair's answers to interrogatories are even more unenlightening. Noonan was the superintendent of the Treatment Center as of May, 1986. Fair was the Commissioner of the Department of Corrections as of that date. Nothing in their interrogatory answers supports the plaintiff's claim of a failure to supervise the correction officers in this case.

In summary, the plaintiff has failed to set forth a triable issue on Count Three. Accordingly, the court will grant the renewed motion for summary judgment as to this count.

### 4. *Qualified Immunity*

Even if one were to assume that a claim for supervisory liability could be based on the defendants' failure to promulgate regulations requiring consultation with or the presence of a clinician prior to, a strip search, there is still a question of whether qualified immunity bars this action against Noonan, Fair and DaSilva.

The magistrate judge did not consider the defendants' argument that they are protected by qualified immunity.

■ Public officials performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). *See also Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Frazier v. Bailey,* 957 F.2d 920, 929 (1st Cir. 1992). According to the First Circuit, "*Harlow* requires that we examine two issues: (1) whether at the time of the alleged conduct there was a clearly established constitutional right that was violated; and (2) whether a reasonable person would have known that her conduct violated that constitutional right." *Frazier,* 957 F.2d at 929. The con-

stitutional right must be clearly established as of the time of the conduct in question, not through the use of hindsight. *Id.*

■ As of May 27, 1986, it was not clearly established that consultation with a clinician prior to a strip search was required by the Due Process Clause. A 1992 decision of Judge Keeton in the plaintiff's related injunction action amounted to the first ruling providing for a right to medical consultation prior to a strip search.

In *Cameron v. Tomes,* 783 F.Supp. 1511, 1526 (D.Mass.1992), Judge Keeton granted an injunction prohibiting the use of an "extraction team" without first consulting a clinician as to the professionally acceptable way to handle the situation. Judge Keeton's discussion as to this aspect of his decision was as follows:

Cameron presented evidence that the use of the extraction team was unnecessary and compromised Cameron's treatment. Dr. Jurgela testified that in his professional judgment the appropriate way to proceed would have been to (1) wait for a bowel movement to see if Cameron was hiding anything or (2) call in a clinician to speak to Cameron and try to reason with him before immediately proceeding with the extraction team. Consultation with professional staff before proceeding with such a serious invasion of an involuntarily committed patient's liberty is a constitutional requirement. *See Doe,* 808 F.2d at 885 (noting that use of restraints on patients was constitutionally permissible because they were only used after approval by a member of the professional staff). Defendants did not offer any evidence that proceeding with the extraction team without even consulting a clinician was a professionally acceptable decision. Although there was testimony as to the need in general to prevent patients from smuggling in contraband, there was no testimony that Cameron posed such a risk, especially after visiting with his attorney. In addition, there was no testimony that defendants could not apply the professionally acceptable approach suggested by Dr. Jurgela. It does not follow, of course, that Cameron cannot be strip searched. It

does follow, however, that defendants failed to weigh its [sic] own security interests with Cameron's liberty interests, and thus to reach a professional judgment. Rather defendants blindly enforced a Center policy without any consideration, any judgment as to how it would affect Cameron, and whether defendants' needs—if indeed there were any needs—outweighed the known harmful effect on Cameron. Such a severe violation of Cameron's liberty, a person committed to the Center for treatment, not punishment, cannot pass constitutional muster.

*Tomes,* 783 F.Supp. at 1523.

The First Circuit, on reviewing Judge Keeton's decision, departed from Judge Keeton's reasoning. *Cameron v. Tomes,* 990 F.2d 14, 18–19 (1st Cir.1993). The court stated:

It is settled that those who are confined by the state, for whatever reason, are entitled under the Constitution to food, clothing, medical care, and reasonable efforts to secure physical safety. Beyond such obvious essentials, however, guidance from the Supreme Court is largely confined to one cautiously phrased decision.

*Id.* at 18. That case, *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), dealt with a retarded child whose mother had placed him in a state institution. The Supreme Court held that mentally retarded persons in state institutions were entitled to "conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests." *Id.* at 324, 102 S.Ct. at 2462. The First Circuit stated that

*Youngberg* left in limbo a prior line of lower court cases and academic literature that had sought to shape a broad constitutional 'right to treatment,' including treatment of the psychological ills of confined persons. Since *Youngberg,* a few circuits have ventured into this constitutional territory, returning with different answers. We ourselves may have seemed to send mixed signals. In *Doe v. Gaughan,* 808 F.2d 871 (1st Cir.1986), this court under the caption 'constitutional right to treatment,' agreed that *Youngberg* extended beyond the retarded to protect similar interests of those mentally ill persons civilly committed to a different Bridgewater facility. . . .

*Cameron,* 990 F.2d at 19 (footnotes and citation omitted). The First Circuit went on to note that in a later case it explicitly refused to decide whether there was a constitutional right to treatment at the Treatment Center. *Id., citing Langton v. Johnston,* 928 F.2d 1206, 1217 (1st Cir.1991). The court stated:

It is . . . unclear whether, if the Supreme Court did provide a general 'right to treatment' for civilly committed persons, it would apply that right to those held as well under criminal sentence. . . . At the very least, the Court's approach in *Youngberg* suggests hewing to the case-by-case approach.

*Cameron,* 990 F.2d at 19 (footnote and citation omitted). The First Circuit concluded that the Due Process Clause's requirement that conditions not fall below the minimum standards of civilized decency, as opposed to a generalized right to treatment, provided the appropriate framework for analyzing the claims. *Id.* The court upheld Judge Keeton's factual findings, stating: "It is true that these findings were made in the framework of a legal analysis that we do not adopt, but the findings fit well enough into a due process framework and this court may affirm on any grounds supported by evidence." *Id.* at 20.

Far from a constitutional right to treatment at the Treatment Center being "clearly established," the First Circuit has concluded that a general right to treatment has not been articulated by the Supreme Court, is at best murky, and is to be decided on a case-by-case basis. In addition, even if the *Doe* case (on which Judge Keeton relied) arguably suggested that a right to treatment extends to inmates at Bridgewater, there had not been an articulated constitutional right to consultation with a clinician prior to a strip search before Judge Keeton issued his 1992 opinion. Additionally, the *Doe* case was decided several months *after* the strip search in this case. Even if the *Doe* case arguably furnishes a basis (later disrupted by the First Circuit's 1993 *Cameron* case) for a clearly established right, it cannot help the

plaintiff in his action for damages, because the purported right was not articulated until after the events in question took place.

It is also significant that the First Circuit, in an action under 42 U.S.C. § 1983, decided that as of 1981, a right to receive psychological treatment had not been clearly established for the purposes of *Harlow v. Fitzgerald* and its progeny. *Knight v. Mills,* 836 F.2d 659, 668 (1st Cir.1987). While the *Knight* case applied to events which took place five years before the events in this case, the court went on to state that as of 1984, no clearly established right to psychological treatment had been declared by the Supreme Court. *Id.* at 668 n. 13. "Indeed, as of today, neither the Supreme Court nor this court has yet to resolve this issue." *Id.*

The court concludes that the failure to require the consultation or presence of a clinician prior to a strip and body cavity search cannot be said to have violated a clearly established constitutional right, as of May, 1986. Defendants DaSilva, Noonan and Fair cannot fairly be said to have known that their conduct was unlawful. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. *Knight,* 836 F.2d at 669. Accordingly, even if the court were to rule that the plaintiff has presented a triable issue under Count Three, qualified immunity bars the claim against these three defendants, and the three defendants are entitled to summary judgment.

### 5. *Count Nine: State Law Claims.*

■ As noted in part 1 of this memorandum, Judge Keeton denied the defendants' motion for summary judgment as to Count Nine of the plaintiff's amended complaint, which asserted a claim against all of the defendants under the Massachusetts Constitution. Judge Keeton reasoned that the state constitution provides no less protection than the Fourth Amendment, and accordingly for the reasons stated in connection with his Fourth Amendment analysis, he denied the defendants' motion for summary judgment. Implicit in the Keeton Order was the

decision that, with respect to the parallel state law claims asserting supervisory liability, the plaintiff be given an opportunity for further discovery.[3]

Years having passed since the issuance of the Keeton Order, more then adequate time for discovery thus having elapsed, and nothing new having been uncovered on the Count Nine claim, the court now concludes that summary judgment in favor of DaSilva, Fair, Noonan, Murphy and Tink is appropriate as to Count Nine.

Murphy is alleged to have been the Commissioner of the Department of Mental Health and Tink is alleged to have been the Administrator of the Treatment Center at the time of the incident. Judge Keeton granted summary judgment for Murphy and Tink on all of the other state and federal claims against them, including Count Six, for failing to post the Treatment Center's policy on strip and body cavity searches and promulgating a policy requiring Treatment Center inmates to submit to strip and body cavity searches following a visit from counsel; Count Seven, for failing to prevent the videotaping of the plaintiff, thereby allegedly invading his privacy; Count Eight, for failing adequately to investigate the incident involving the plaintiff; and Count Fifteen, for invading the plaintiff's privacy.

After the Keeton Order, nothing alleged in Count Nine pertains to the alleged conduct of defendants Murphy and Tink. Count Nine now only applies to conduct which involves the officers' use of unreasonable force in the search of the plaintiff. No facts in the record, and no remaining allegations against Murphy and Tink present a triable issue against them, relating to the officers' use of unreasonable force.

As to defendants DaSilva, Noonan and Fair, this court has already concluded that nothing in the record supports a claim for failure to supervise. The court concludes that the plaintiff has failed to present sufficient facts against them to support a state constitutional claim.

---

**3.** As noted above, Judge Keeton explicitly allowed the plaintiff to proceed to discovery under Fed. 12. Civ.P. 56(f) on the supervisory claims under the Fourth Amendment in Count Three.

Thus, by implication he permitted discovery to proceed under the parallel state claim in Count Nine. Keeton Order at 10.

6. *Conclusion.*

To summarize:

1. The court grants summary judgment in favor of defendants DaSilva, Noonan and Fair as to Count Three of the plaintiff's amended complaint; and

2. The court grants summary judgment in favor of defendants DaSilva, Noonan, Fair, Murphy and Tink as to Count Nine of the plaintiff's amended complaint.[4]

So ordered.

4. The case shall proceed to trial against defendants Swain, Hamel, Hart, Beaulieu, Benyue, Chartier, Modica, Edington and Anacki, on Counts One, Two, Nine and Twelve of the amended complaint.